# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| HELGA COHEN, STEVEN COHEN,<br>LISA ECHOLS ROBERT ECHOLS, JR.,<br>MELISSA FRITZ, WAYNE FRITZ,<br>ALEXANDER GILES, CAROLYN GILES,<br>AIMEE GONDI, GOKUL GONDI,<br>DENISE HUBBARD, CHARLES HUBBARD,<br>CHRISTOPHER LONG, LESLIE LONG,<br>JANE MARSHALL, CHRISTOPHER MARSHALL,<br>JOSEPH PARK, SOHEE PARK,<br>JOHN PARROTT, KRISTA PARROTT,<br>JESSE MYERS, JACQUELINE MYERS,<br>KIM RICH, SMYTHE RICH,<br>AND DONNA STROM,<br><br>PLAINTIFFS,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>DEFENDANT. | CIVIL ACTION NO.: 3:16-1489-JMC |

## COMPLAINT

COMES NOW, Helga Cohen, Steven Cohen, Lisa Echols, Robert Echols, Jr., Melissa Fritz, Wayne Fritz, Alexander Giles, Carolyn Giles, Aimee Gondi, Gokul Gondi, Denise Hubbard, Charles Hubbard, Christopher Long, Leslie Long, Jane Carter Marshall, Christopher Marshall, Joseph Park, Sohee Park, John Parrott, Krista Parrott, Donna Strom, Jesse Myers, Jacqueline Myers, Kim Rich, and Smythe Rich (here in after collectively "Plaintiffs") and file their tort claims act Complaint against the United States of America for tortious acts committed by the Department of the Army as more fully set forth herein:

1

## PARTIES, JURISDICTION AND VENUE

1. At all times relevant to this complaint, Plaintiffs Helga Cohen and Steven Cohen have been citizens and residents of the State of South Carolina, who resided on or near Wildcat Creek.

2. At all times relevant to this Complaint, Plaintiffs Lisa Echols and Robert Echols, Jr. have been citizens and residents of the State of South Carolina, who resided on or near Wildcat Creek.

3. At all times relevant to this Complaint, Plaintiffs Melissa Fritz and Wayne Fritz have been citizens and residents of the State of South Carolina, who resided on or near Wildcat Creek.

4. At all times relevant to this Complaint, Plaintiffs Alexander Giles and Carolyn Giles have been citizens and residents of the State of South Carolina, who resided on or Wildcat Creek.

5. At all times relevant to this Complaint, Plaintiffs Aimee Gondi and Gokul Gondi have been citizens and residents of the State of South Carolina, who resided on or near Wildcat Creek.

6. At all times relevant to this Complaint, Plaintiffs Denise Hubbard and Charles Hubbard have been citizens and residents of the State of South Carolina, who resided on or near Wildcat creek.

7. At all times relevant to this Complaint, Plaintiffs Christopher Long and Leslie Long have been citizens and residents of the State of South Carolina, who resided on or near Wildcat creek.

8. At all times relevant to this Complaint, Plaintiffs Jane Carter Marshall and Christopher Marshall have been citizens and residents of the State of South Carolina, who resided on or near Wildcat creek.

9. At all times relevant to this Complaint, Plaintiffs Joseph Park and Sohee Park have been citizens and residents of the State of South Carolina, who resided on or near Wildcat creek.

10. At all times relevant to this Complaint, Plaintiffs John Parrott and Krista Parrott have been citizens and residents of the State of South Carolina, who resided on or near Wildcat creek.

11. At all times relevant to this Complaint, Plaintiff Donna Strom has been a citizen and resident of the State of South Carolina, who resided on or near Wildcat creek.

12. At all times relevant to this Complaint, Plaintiffs Jesse Myers and Jacqueline Myers have been citizens and residents of the State of South Carolina, who resided on or near Wildcat creek.

13. At all times relevant to this Complaint, Plaintiffs Kim Rich and Smythe Rich have been citizens and residents of the State of South Carolina, who resided on or near Wildcat creek.

14. Upon information and belief, the United States is a proper Defendant under the provisions of 28 U.S.C. § 1346 (the Federal Tort Claims Act), hereinafter referred to as the FTCA. Pursuant to the FTCA, the United States is subject to suit "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private

person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

15. The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1346(b)(1).

16. The majority of the acts and omissions which are the subject matter of this Complaint occurred in the District of South Carolina, in Richland County.

17. The Flood Control Act of 1928, specifically 33 U.S.C. 702c, does not provide the Defendant with immunity for their tortious conduct.

18. On October 20, 2015, Plaintiffs Helga Cohen, Steven Cohen, Lisa Echols, Robert Echols, Jr., Melissa Fritz, Wayne Fritz, Alexander Giles, Carolyn Giles, Aimee Gondi, Gokul Gondi, Denise Hubbard, Charles Hubbard, Christopher Long, Leslie Long, Jane Carter Marshall, Christopher Marshall, Joseph Park, Sohee Park, John Parrott, and Krista Parrott each submitted administrative claims to the Department of the Army and the Army Corps of Engineers. These claims have not been resolved in the six months following the filing of the notice of claim.

19. On November 2, 2015, Plaintiffs Donna Strom, Jesse Myers, Jacqueline Myers, Kim Rich, and Smythe Rich each submitted administrative claims to the Department of the Army and the Army Corps of Engineers. These claims have not been resolved in the six months following the filing of the notice of claim.

20. Jurisdiction and venue are proper before this Court.

**FACTUAL ALLEGATIONS**

21. Plaintiffs are all owners of real and/or personal property in Kings Grant, a subdivision located in Columbia, South Carolina, which abuts Fort Jackson. The Plaintiffs' homes were all located directly on or in close proximity to Wildcat creek.

22. Created in 1917, "Fort Jackson is the largest and most active Initial Entry Training Center in the U.S. Army, training 50 percent of all soldiers and 60 percent of the women entering the Army each year." http://jackson.armylive.dodlive.mil/about/ last visited May 4, 2016.

23. As a base responsible for a large volume of soldiers and their families, Fort Jackson regularly promotes, hosts, and encourages activities targeted to soldiers and their families' morale, welfare and recreation.

24. In fact, soldier recreation is of such integral importance that Fort Jackson maintains extensive information on a separate website (http://jackson.armymwr.com/us/jackson) dedicated to Morale, Welfare and Recreation (MWR) for soldiers and their families.

25. One of the attractions for soldiers and their families is the Fort Jackson Green Zone Trail, which is a five mile loop located within the containment area of Fort Jackson. http://jackson.armymwr.com/us/jackson/programs/parks last visited May 4, 2016.

26. The website boasts that the Green Zone Trail includes several distinct areas including Patriots Park. http://jackson.armymwr.com/us/jackson/programs/parks last visited May 4, 2016.

27. At all times relevant to this Complaint, Semmes Lake and Semmes Lake dam have been a part of the Patriots Park Greenway, which "provides natural areas for Soldiers and Families to spend an hour or a whole day while taking in the scenic beauty that is Fort Jackson." http://jackson.armymwr.com/us/jackson/programs/parks last visited May 4, 2016.

28. Semmes Lake is also used for fishing and boating, and has played host to fishing tournaments in the past.

5

29. For example, on June 7, 2014, Semmes Lake hosted the Pure Fishing Derby. The promotion for the derby read Fort Jackson "Outdoor Recreation has partnered with one of the largest fishing tackle and gear supplier in the world, Pure Fishing, to host the greatest fishing derby Fort Jackson has ever seen." http://jackson.mhsoftware.com/ViewItem.html?cal_item_id=6183&dtwhen=2456816 last visited May 4, 2016.

30. As the above paragraphs demonstrate, Fort Jackson promotes, encourages, and specifically facilitates the use of Semmes Lake for **recreation purposes** as part of the Fort Jackson MWR program.

31. As referenced above, Semmes Lake is a lake located in Richland County, South Carolina, which is owned and operated by Fort Jackson. Semmes Lake is one of two sources of water that feed Wildcat Creek (Lower Legion Lake being the other), which runs through the Kings Grant Subdivision.

32. With a surface area of 29 acres, Semmes Lake has a capacity of 641 acre feet of water, which equates to roughly 208,870,767 gallons.

33. Semmes Lake dam was built in 1940, and is considered an earthen dam, constructed of compacted soil.

34. At all times relevant to this Complaint, the Semmes Lake dam was the only structure holding back the massive amounts of water contained within Semmes Lake.

35. As the owner of the Semmes Lake dam, the Department of the Army had the exclusive responsibility and control over, oversight, inspections, maintenance and repairs.

36. On or around September 10, 2013, the U.S Army Corps of Engineers – Engineer Research and Development Center ("ERDC") performed an inspection of the Semmes Lake dam. See Exhibit 1, Shaun Stanton Email.

37. During the September 10, 2013 inspection, the ERDC noted numerous deficiencies with the dam in a report, which was then provided to the Department of the Army. Exhibit 1 ("I reviewed our report for Semmes and we did a very good job of describing all of the deficiencies that may have led to the failure.")

38. The report from September of 2013 further classified Semmes Lake as "an intermediate size significant hazard dam." Exhibit 1.

39. In his October 15, 2015 email, Shaun Stanton, the Program Manager for the IMCOM ATTIP Dam Inspection ERDC, notes: "ERDC last inspected [the dam] in 2013 and rated the dam a serious hazard which is our second worst rating." Exhibit 1.

40. Mr. Stanton's email establishes that after performing this inspection of Semmes Lake in September of 2013, the dam was found to be a "serious hazard." This information was communicated to the Department of the Army, who had exclusive control to make repairs.

41. Mr. Stanton's email further notes that the Savannah district "requested the reports for Fort Jackson[,] and Ali has agreed to release the information out to them." See Exhibit 1.

42. However, to date, the Department of the Army has refused to produce the September 10, 2013 *Periodic Dam Inspection Report, Semmes Lake Dam*. See Exhibit 2, Correspondence from Bill D. Woodard dated December 8, 2015.

43. Upon information and belief, despite knowledge that the Semmes Lake dam was a "serious hazard" as far back as September of 2013, no repairs were made to the dam from the date of the 2013 inspection through the dam failure that is the subject matter of this complaint.

44. Further, Semmes Lake dam has a long history of issues dating as far back as 1981.

45. In addition to Semmes Lake, Lower Legion Lake is another lake in Richland County, South Carolina, located on Fort Jackson, and owned by Fort Jackson, which is part of the Department of the Army.

46. Specifically, Lower Legion Lake is located near the Fort Jackson golf course and Fort Jackson Officer's Club.

47. On or around October 3, 2013, Columbia, South Carolina, experienced heavy rain fall.

48. Prior to the rain that began on October 3, 2015, SC DHEC had advised ALL dam owners to lower water levels in preparation for the upcoming storm.

49. Yet, upon information and belief, and despite the September 2013 inspection, and the warning from SC DHEC regarding dam levels, the Department of the Army failed to take corrective measures, make repairs, or to lower dam levels of the Semmes Lake dam.

50. Instead, the dam remained in the same state it had been in since September of 2013 when the ERDC classified the dam as a "serious hazard" in need of repair.

51. On Sunday morning, October 4, 2015 at approximately 3 A.M., the Semmes Lake Dam located at Fort Jackson on Wildcat Creek failed.

52. The water released from Semmes Lake traveled down Wildcat Creek, which flows through Kings Grant.

53. The water release was caused by a large hole that developed in the earthen dam. See Exhibits 3 - 6, Pictures of Semmes Lake and Semmes Lake Dam.

54. On Sunday morning, October 4, 2015 a dike holding water in the Lower Legion Lake failed.

    http://www.thestate.com/news/local/military/article43636920.html#storylink=cpy last visited May 4, 2016.

55. The water released from Lower Legion Lake traveled down into Wildcat Creek, flowing directly through Kings Grant.

56. Fort Jackson has admitted that the dam at Semmes Lake and the dike at Lower Legion Lake both failed.

    http://www.thestate.com/news/local/military/article43636920.html#storylink=cpy last visited May 4, 2016.

57. Upon information and belief, despite knowledge of the dam failures, Fort Jackson did nothing to warn the Plaintiffs of the water that was about to inundate their homes.

58. As a result of the dam failures, Plaintiffs' houses began to experience water intrusion between 4:00 and 5:00 A.M. on the morning of October 4, 2015.

59. Water levels in Plaintiffs' houses reached as high as 9-feet.

60. However, almost all of the excess water caused by the dam failures had left the neighborhood by 8:00 A.M.

61. The damage to Plaintiffs' real and personal property would not have occurred but for the failure of the Semmes Lake dam and Lower Legion Lake.

9

62. As a result of the water intrusion, Plaintiffs' houses were rendered uninhabitable for extended lengths of time, requiring Plaintiffs to evacuate and relocate.

63. All Plaintiffs required expert water remediation companies to handle the aftermath of the water intrusion.

64. As a result of the water intrusion, Plaintiffs suffered real and/or personal property damage in excess of twenty million dollars ($20,000,000.00).

### FOR A FIRST CAUSE OF ACTION
### (Negligence and/or Gross Negligence as to the United States of America)

65.  Plaintiffs reallege the previous paragraphs as if fully restated herein.

66. The United States by and through the Department of the Army and/or the U.S. Army Corps of Engineers owed a duty to Plaintiffs, and others living downstream of its dams, to properly construct, maintain, monitor, operate and/or otherwise safely manage their dams to ensure the safety of those who may foreseeably fall victim to their potential failure.

67. Upon information and belief, more than two (2) years prior to the failure of Semmes Lake dam, Defendant was aware that the dam was "an intermediate size significant hazard dam."  See Exhibit 1.

68. Moreover, the Department of the Army and/or the U.S. Army Corps of Engineers was on actual notice since at least September 10, 2013 that the Semmes Lake dam rated as a "serious hazard which is [their] second to worst rating."  See Exhibit 1.

69. In addition, despite this knowledge, neither the Department of the Army nor the U.S. Army Corps of Engineers made these findings available to warn the public of this hazard.

70. Upon information and belief, neither the Department of the Army nor the U.S. Army Corps of Engineers took any action to address the numerous concerns raised by the September 10, 2013 inspection report.

71. Defendant breached its duty to the Plaintiffs in one or more of the following ways:

    a. Failing to reasonably and properly inspect the dams;

    b. Failing to reasonably and timely repair known deficiencies;

    c. Failing to reasonably and timely act upon reports of deficiencies;

    d. Failing to adequately maintain the dams;

    e. Failing to perform routine inspection and maintenance of the dams;

    f. Failing to have policies and procedures in place for routine maintenance and reasonable repair of the dams;

    g. If such policies and procedures regarding routine maintenance and repair existed, failing to adhere to those policies and procedures;

    h. Blatantly ignoring reports that provided actual notice of the danger of a dam failure;

    i. Failing to timely act upon actual notice of the danger of dam failure;

    j. Affirmatively deciding to allocate funds elsewhere, despite the known threat of harm posed by deficiencies identified in the September 2013 inspection;

    k. Such other particulars as may be revealed.

72. As a direct and proximate result of Defendant's acts and/or omissions, Plaintiffs' sustained severe real and/or personal property damage in the early morning hours immediately following the dam failures, which allowed an enormous amount of muddy water to flow through and, eventually, into Plaintiffs' homes.

73. Defendant's had actual knowledge of the threat of danger to Plaintiffs' homes posed by the hazardous condition of the dams, yet failed to take reasonable steps to repair deficiencies despite this actual knowledge.

74. The damage to Plaintiffs' homes was foreseeable and directly and proximately caused by the failure of these manmade dams and the Department of the Army and/or the Army Corps of Engineers failure to properly maintain their dams in a reasonable manner to ensure the safety of those homes located downstream.

75. As a result of the breach by the Department of the Army and/or the Army Corps of Engineers, Plaintiffs have sustained substantial losses, including but not limited to remediation expenses, alternative living expenses, cost of repair to real property, loss of personal property, and loss of property value.

76. Due to the property damage sustained by Plaintiffs as a direct and proximate result of the negligence and carelessness of the Department of the Army and/or the Army Corps of Engineers, Plaintiffs are entitled to receive their actual damages in such an amount as the Court may determine.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this court order judgment against the United States of America such an amount as the Court may determine proper, for the reasonable costs associated with this action, as well as any other interest and fees to which the Plaintiffs and/or counsel for the Plaintiffs may otherwise be entitled, and for all other relief in law and equity which this Court deems just and proper.

Respectfully Submitted, this 9th day of May, 2016,

/s/ J. Preston Strom, Jr.
J. Preston Strom, Jr. (Fed. I.D. No. 4354)
Mario A. Pacella (Fed. I.D. No. 7538)
John R. Alphin (Fed. I.D. No. 9923)
Jessica L. Fickling (Fed. I.D. No. 11403)
petestrom@stromlaw.com
mpacella@stromlaw.com
jalphin@stromlaw.com
jfickling@stromlaw.com
Strom Law Firm, LLC
2110 Beltline Blvd.
Columbia, South Carolina 29204
TEL:   (803) 252-4800
FAC:   (803) 252-4801

A. Camden Lewis (Fed. ID No. 2669)
J. Ryan Heiskell (Fed. ID No. 10212)
LEWIS BABCOCK L.L.P.
Post Office Box 11208
1513 Hampton Street (29201)
Columbia, South Carolina 29211-1208
Tel.:    (803) 771-8000
Fax:    (803) 733-3534
Email:  acl@lewisbabcock.com
           jrh@lewisbabcock.com

13