IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Helga Cohen, Steven Cohen, Lisa Echols, Robert Echols, Jr., Melissa Fritz, Wayne Fritz, Alexander Giles, Carolyn Giles, Aimee Gondi, Gokul Gondi, Denise Hubbard, Charles Hubbard, Christopher Long, Leslie Long, Jane Marshall, Christopher Marshall, Joseph Park, Sohee Park, John Parrott, Krista Parrott, Jesse Myers, Jacqueline Myers, Kim Rich, Smythe Rich, and Donna Strom, | ) ) ) ) ) ) ) ) ) ) ) | Civil Action No.: 3:16-cv-01489-JMC |
| Plaintiffs, | ) ) | |
| v. | ) ) | **ORDER AND OPINION** |
| United States of America, | ) ) | |
| Defendant. | ) ) | |
| Martha Brown, Frank Brown, Jennifer Feldman, Barry Feldman, John Babson, Steve Cloud, Laura Cloud, and Elizabeth Brogdon, | ) ) ) ) ) | Civil Action No.: 3:16-cv-03053-JMC |
| Plaintiffs, | ) ) | **ORDER AND OPINION** |
| v. | ) ) | |
| United States of America, | ) ) | |
| Defendant. | ) ) | |
| Kings Grant Owners' Association, Inc., | ) ) | Civil Action No.: 3:17-cv-00289-JMC |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORDER AND OPINION** |
| United States of America, | ) ) | |
| Defendant. | ) ) | |

Plaintiffs above-named collectively filed these related actions seeking money damages from Defendant United States of America (the "Government") for the destruction caused to their

1

homes by flood water freed when it breached the Semmes Lake and Lower Legion Lake Dams at Fort Jackson (South Carolina) army installation in October 2015. *See Cohen v. United States*, C/A No. 3:16-cv-01489-JMC, ECF No. 1 (D.S.C. May 9, 2016) ("*Cohen*"); *Brown v. United States*, C/A No. 3:16-cv-03053-JMC, ECF No. 1 (D.S.C. Sept. 8, 2016) ("*Brown*"); and *Kings Grant Owners Ass'n, Inc. v. United States*, C/A No. 3:17-cv-00289-JMC, ECF No. 1 (D.S.C. Jan. 31, 2017) ("*KGOAI*").

This matter is before the court by way of Plaintiffs' Motions to Alter or Amend Judgment pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure. (ECF No. 191 (*Cohen*); ECF No. 134 (*Brown*); ECF No. 120 (*KGOAI*).[1]) Specifically, Plaintiffs seek to alter or amend the court's Order entered on September 27, 2018 (ECF No. 186) (the "September Order"), and the subsequent Judgment entered on September 28, 2018 (ECF No. 187), which resulted in the dismissal of Plaintiffs' Complaints for lack of jurisdiction. The Government opposes Plaintiffs' Motions arguing that "none of the grounds for granting such motion[s] exist." (ECF No. 193 at 2.) For the reasons set forth below, the court **DENIES** Plaintiffs' Motions to Alter or Amend.

## I. RELEVANT BACKGROUND TO PENDING MOTIONS[2]

During a four day period from October 2–5, 2015, a historic storm event occurred across South Carolina causing "rainfall totals in the Columbia area [to] exceed[] the 1,000-year recurrence intervals as referenced to the point precipitation frequency estimates in NOAA Atlas

---

[1] The court observes that Plaintiffs filed the same brief and exhibits in support of their Motions in all three actions. Accordingly, the court will only cite hereinafter to documents filed in *Cohen*.

[2] The September Order contains a thorough recitation of the relevant factual and procedural background of the matter and is incorporated herein by reference. (*See* ECF No. 186 at 3–9.)

14[3] (CISA, 2015)." *Environment Assessment: Replacement of Semmes Lake Dam*, http://www.sac.usace.army.mil/Portals/43/docs/milcon/Semmes%20Lake%20Draft%20EA.pdf?ver=2017-08-11-152050-713 (last visited Sept. 17, 2018). This historic storm event caused floodwaters which breached both the Semmes Lake Dam and the Lower Legion Lake Dam located on Fort Jackson. (ECF No. 114 at 11–12.) Because they believed damage to their real and personal property occurred as a result of the Government's breach of specified duties owed to them that resulted in "the failure of the Semmes Lake dam and Lower Legion Lake dike" (*see* ECF No. 48 at 11 ¶ 77, 12–13 ¶ 90), Plaintiffs filed Complaints against the Government for negligence. (ECF No. 1 at 10 ¶ 65–12 ¶ 76.) After the court entered an Order granting a Motion to Amend the Complaint (ECF Nos. 40, 47), Plaintiffs filed an Amended Complaint alleging claims for negligence, trespass, and nuisance. (ECF No. 48 at 11 ¶ 82–16 ¶ 113.) After the parties conducted extensive discovery, Plaintiffs filed Motions for Partial Summary Judgment and the Government filed a Motion to Dismiss or, in the alternative, for Partial Summary Judgment. (ECF Nos. 103, 140.) After the parties were given the opportunity to fully brief (ECF Nos. 126, 152) and provide oral argument in support of their Motions (ECF No. 182) on September 21, 2018, the court entered the September Order finding that the conduct challenged by Plaintiffs fell under the discretionary function exception of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680. (ECF No. 186 at 22 (referencing 28 U.S.C. § 2680(a)).) As a result, the court granted the Government's Motion to Dismiss, dismissed Plaintiffs' Complaints, and found that it was "without jurisdiction to review the merits of Plaintiffs' Motion for Summary Judgment and the Government's Motion for Summary Judgment." (*Id.* at 22–23.) In reaching this

---

[3] "NOAA" is the acronym for the National Oceanic and Atmospheric Administration. The "NOAA Atlas 14" is "intended as the official documentation of precipitation frequency estimates and associated information for the United States." *NOAA Atlas 14*, https://www.nws.noaa.gov%2Foh%2Fhdsc%2FPF_documents%2FAtlas14_Volume1.pdf&usg=AOvVaw2DQBGo3Vs317O8rFkUZsrp (last visited Sept. 27, 2018).

determination, the court made the following observations:

> "The FTCA excludes discretionary functions from its waiver of sovereign immunity." *Johnson v. United States*, C/A No.: 5:17-cv-00012, 2018 WL 4169141, at *3 (W.D. Va. Aug. 30, 2018) (citing 28 U.S.C. § 2680(a)). "This discretionary function exception provides that the sovereign immunity waiver does not apply to: any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency or an employee of the Government, whether or not the discretion involved be abused." *Id.* (quoting § 2680(a)).

. . .

> "To state a claim under the FTCA, a plaintiff has the burden of stating a claim for a state-law tort and establishing that the discretionary function exception does not apply." *Spotts v. United States*, 613 F.3d 559, 569 (5th Cir. 2010) (citation omitted). If the exception does apply, the court "must dismiss the affected claims for lack of subject matter jurisdiction." *Indem. Ins. Co. of N. Am. v. United States*, 569 F.3d 175, 180 (4th Cir. 2009) (citing *Williams v. United States*, 50 F.3d 299, 304–05 (4th Cir. 1995)). In *Indemnity Insurance*, the United States Court of Appeals for the Fourth Circuit provided the following summary of the test used to determine the applicability of the discretionary function exception:
>
>> "To determine whether conduct by a federal agency or employee fits within the discretionary function exception, we must first decide whether the challenged conduct 'involves an element of judgment or choice.'" *Suter v. United States*, 441 F.3d 306, 310 (4th Cir. 2006) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S. Ct. 1954, 100 L.Ed.2d 531 (1988)). "[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" because "the employee has no rightful option but to adhere to the directive." *Berkovitz*, 486 U.S. at 536, 108 S. Ct. 1954.
>>
>> If we determine that the challenged "conduct does involve such discretionary judgment, then we must determine 'whether that judgment is of the kind that the discretionary function exception was designed to shield,' *i.e.*, whether the challenged action is 'based on considerations of public policy.'" *Suter*, 441 F.3d at 311 (quoting *Berkovitz*, 486 U.S. at 536–37, 108 S. Ct. 1954). Critical to proper analysis, this inquiry focuses "not on the agent's subjective intent in exercising the discretion . . ., but on the nature of the actions taken and on whether they are susceptible to policy analysis." *United States v. Gaubert*, 499 U.S. 315, 325, 111 S. Ct. 1267, 113 L.Ed.2d 335 (1991). Thus, "in the usual case" a court should "look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which

we would expect inherently to be grounded in considerations of policy." *Baum v. United States*, 986 F.2d 716, 721 (4th Cir. 1993). "Moreover, when a statute, regulation, or agency guideline permits a government agent to exercise discretion, 'it must be presumed that the agent's acts are grounded in policy when exercising that discretion.'" *Suter*, 441 F.3d at 311 (quoting *Gaubert*, 499 U.S. at 324, 111 S. Ct. 1267).

*Indem. Ins. Co.*, 569 F.3d at 180.

In these cases, Plaintiffs assert that the Government is liable for their damages because it negligently failed to operate the Semmes Lake Dam with a ½ PMF[4] and failed to conduct required maintenance on both dams at issue in this litigation. "[A] safety or engineering standard operates to remove discretion under the FTCA when it is embodied in a specific and mandatory regulation or statute which creates clear duties incumbent upon the governmental actors." *Kennewick Irr. Dist. v. United States*, 880 F.2d 1018, 1026 (9th Cir. 1989). "A general statutory duty to promote safety . . . would not be sufficient." *Id.* (citing *Allen v. United States*, 816 F.2d 1417, 1421 (10th Cir. 1987) (broad and general duty imposed by statute on Atomic Energy Commission to promote safety in atomic testing left room for exercise of discretion)). "[D]iscretion [also] may be removed by a specific mandatory governmental policy duly adopted under authority delegated by statute or regulation." *Id.*

. . .

In considering the applicability of the mandatory standard element of the discretionary function exception as to the failure to operate the Semmes Lake Dam at ½ PMF, Plaintiffs assert that the Government's conduct could not have involved an element of choice because action was mandated by Army Regulations. (ECF No. 152 at 8.) Moreover, Plaintiffs contend that, due to the language in the Army Regulations that suggests an adherence to state regulations, the Government was also mandated to follow DHEC regulations. (*Id.* at 11.) The relevant language contained in Army Regulation ("AR") 420-72 specifies that Army dams "must be maintained *at or above* the minimum condition levels of [the] host State . . ." (emphasis added). (ECF No. 103-4 at 5 § 5-5.) While the court agrees that AR 420-72 instructs the garrison commander to reference state law requirements, the addition of "at or above" in the regulation implies that the garrison commander has a level of discretion. Semmes Lake Dam, at the time of

---

[4] "PMF" is Probable Maximum Flood, which "means the largest flood that theoretically could occur at a given site during our present geological and climatic era." S.C. Code Ann. Regs. 72-1(R) (2012). "The initiating event in a PMF determination is the PMP." *Id.* "'Probable Maximum Precipitation' (PMP) means the theoretically greatest-depth of precipitation for a given duration that is physically possible over a given area at a given time of year; these projected maximum precipitation numbers are arrived at by the National Weather Service by studying actual storm events that have occurred in similar climatic areas." *Id.* 72-1(Q). "The 50 percent of PMF flood simulated represents 18.8 inches of rain over 24 hours, 6.5 inches during the maximum hour." (ECF No. 103-11 at 11.)

the flood, was classified as a significant hazard dam. (ECF Nos. 103-12 at 11, 140-1 at 13.) Under South Carolina Regulations, a dam owner must maintain their spillway-capacity design inside the applicable Table 1 range. *See* S.C. Code Ann. Regs. 72, Table I. However, if the owner can justify the design to DHEC's satisfaction, the spillway-capacity can fall outside of the applicable table range. *Id*. Therefore, the South Carolina Regulations, similar to AR 420-72, contain an implied element of discretion. The ability to choose any level contained in the applicable Table 1 range offers dam owners, and in this situation the garrison commander, a level of discretion.

In addition to the aforementioned, there is not a federal statute, regulation, or policy that specifically prescribes a PMF of ½ for the Semmes Lake Dam. *E.g.*, *Baum*, 986 F.2d at 720 ("The inquiry boils down to whether the government conduct is the subject of any mandatory federal statute, regulation, or policy prescribing a specific course of action."). ARs 420-1 and 420-72 do not impose a course of conduct so specific as to require the ½ PMF asserted by Plaintiffs. *E.g.*, *Fanoele v. United States*, 975 F. Supp. 1394, 1398–99 (D. Kan. 1997) ("[O]nly if a 'specific and mandatory regulation, statute or policy requires a particular course of action' will a government employee's conduct not fall within the discretionary function exception.") (citation omitted). These Army Regulations leave the final decision responsibility for any flood and risk analysis to the discretion of the garrison commander. (S*ee, e.g.*, ECF No. 103-3 at 5 § 7-47(c).) In actuality, the only "federal" documents in the record that reference ½ PMF are the 1997 and 2010 EAPs.[5] However, after consideration of the entirety of the record and after review of additional online sources, the court cannot conclude that an EAP constrains the dam owner's actions "in such a way that he had no discretion but to act only a certain way." *PNC Nat'l Ass'n v. U.S. Army Corps of Eng'rs*, Case No. 2:13-CV-374 JVB, 2018 WL 1531790, at *3 (N.D. Ind. Mar. 29, 2018).

. . .

Upon the court's review, EAPs appear to provide general directives for the purpose of dealing with dam safety emergencies "to prevent the loss of life and/or property" (*see, e.g.*, ECF No. 103-11 at 5(e)), but allow the dam's owner to maintain his or her broad discretion. Therefore, the court finds that neither the EAPs nor any other "federal" statute, regulation, or policy in the record mandate a ½ PMF. Accordingly, the decision to operate and/or maintain the Semmes Lake Dam at a specified PMF involved an element of judgment or choice.

. . .

Plaintiffs claim that the Government failed to conduct required maintenance on the Semmes Lake Dam and the Lower Legion Lake Dam. In their filings, Plaintiffs rely heavily on DA Pamphlet 420-1-3 to support their position regarding the existence of mandatory federal law regarding dam maintenance. However, based on the law cited by the Government, it is clear to the court that DA Pamphlet 420-1-3 cannot serve as mandatory federal law specifically prescribing

---

[5] "EAP" is the acronym for emergency action plan.

a course of action as it relates to dam maintenance. In this regard, without DA Pamphlet 420-1-3, Plaintiffs fail to carry their burden of persuading the court that there are federal statutes, regulations, or policies that specifically govern dam maintenance thereby removing the element of judgment or choice from the Government's actions.

. . .

As to the public policy analysis element of the discretionary function exception, the court observes that Plaintiffs' arguments do not demonstrate that the Government's failure to either operate the Semmes Lake Dam with a ½ PMF or conduct specified maintenance on the Semmes Lake Dam and/or the Lower Legion Lake Dam was a decision made outside of the scope of policy-driven duties. *See A.O. Smith Corp. v. United States*, 774 F.3d 359, 365 (6th Cir. 2014) ("There is a 'strong presumption' that the second part of this *Gaubert* test is satisfied if a court concludes that the employee was exercising discretion." (citing *Gaubert*, 499 U.S. at 324)). "Judicial intervention in such decisionmaking through private tort suits would require the courts to 'secondguess' the political, social, and economic judgments of an agency exercising its regulatory function." *Hawes v. United States*, 322 F. Supp. 2d 638, 645 (E.D. Va. 2004) (citation omitted). "It was precisely this sort of judicial intervention in policy-making that the discretionary function exception was designed to prevent." *Id.* at 645–46.

Therefore, upon consideration of the foregoing, the court finds that the Government's alleged negligent conduct falls within the discretionary function exception and does not form a proper basis for a lawsuit under the FTCA. Accordingly, the court finds that it lacks subject matter jurisdiction over these actions and must dismiss them.

(ECF No. 186 at 15–22.)

Based on the foregoing, the court entered Judgment for the Government on September 28, 2018. (ECF No. 187.)

On September 25, 2018, Plaintiffs took the deposition of the Government's Rule 30(b)(6) designated representative, Lieutenant Colonel ("LtCol") Richard T. Childers of the United States Army Corps of Engineers.[6] (*See* ECF No. 191-1 at 2.) Based on LtCol Childers' testimony, Plaintiffs filed the instant Motions on October 26, 2018, seeking to alter or amend the September

---

[6] In their briefs, Plaintiffs observe that LtCol Childers' deposition was initially scheduled to occur before the motions hearing, which was originally scheduled to be held on October 2, 2018. (*See* ECF No. 191-1 at 2 n.1 (citing ECF No. 101).) However, on September 12, 2018, the court rescheduled the motions hearing for September 21, 2018. (*See* ECF Nos. 171, 172.)

Order and resulting Judgment. (ECF No. 191.)

## II. JURISDICTION

The court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1346(b)(1), which grants district courts original jurisdiction over civil actions against the Government including those brought under the FTCA wherein the Government can be found "liable to a tort claimant to the same extent that a private person would be liable according to the law of the state of the occurrence." *Juaire v. United States*, No. 4:09-cv-709-TLW, 2012 WL 527598, at *10 (D.S.C. Feb. 16, 2012) (citing 28 U.S.C. § 1346(b) and § 2674).

## III. LEGAL STANDARD

Generally, motions to alter or amend are raised pursuant to Rules 59 and/or 60 of the Federal Rules of Civil Procedure.

Rule 59 allows a party to seek an alteration or amendment of a previous order of the court. Fed. R. Civ. P. 59(e). Under Rule 59(e), a court may "alter or amend the judgment if the movant shows either (1) an intervening change in the controlling law, (2) new evidence that was not available at trial, or (3) that there has been a clear error of law or a manifest injustice." *Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 407 (4th Cir. 2010); *see also Collison v. Int'l Chem. Workers Union*, 34 F.3d 233, 235 (4th Cir. 1994). It is the moving party's burden to establish one of these three grounds in order to obtain relief under Rule 59(e). *Loren Data Corp. v. GXS, Inc.*, 501 F. App'x 275, 285 (4th Cir. 2012). The decision whether to reconsider an order pursuant to Rule 59(e) is within the sound discretion of the district court. *Hughes v. Bedsole*, 48 F.3d 1376, 1382 (4th Cir. 1995). A motion to reconsider should not be used as a "vehicle for rearguing the law, raising new arguments, or petitioning a court to change its mind." *Lyles v. Reynolds*, C/A No. 4:14-1063-TMC, 2016 WL 1427324, at *1 (D.S.C. Apr. 12, 2016) (citing *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008)).

Rule 60(b) allows the court to relieve "a party . . . from a final judgment, order, or proceeding" due to (1) "mistake, inadvertence, surprise, or excusable neglect"; (2) "newly discovered evidence"; (3) "fraud . . . , misrepresentation, or misconduct"; (4) a void judgment; (5) a satisfied, released, or discharged judgment; or (6) "any other reason that justifies relief." Fed. R. Civ. P. 60(b); *see also United States v. Winestock*, 340 F.3d 200, 203–4 (4th Cir. 2003). Rule 60(b) "does not authorize a motion merely for reconsideration of a legal issue." *United States v. Williams*, 674 F.2d 310, 312 (4th Cir. 1982). "Where the motion is nothing more than a request that the district court change its mind . . . it is not authorized by Rule 60(b)." *Id.* at 313. "A motion for reconsideration under Rule 60(b) is addressed to the sound discretion of the district court and . . . [is] generally granted only upon a showing of exceptional circumstances." *Lyles*, 2016 WL 1427324, at *1 (citation and internal quotation marks omitted).

## IV. ANALYSIS

A. <u>The Parties' Arguments</u>

In their Motions, Plaintiffs assert that the court should alter and amend the September Order and Judgment based on LtCol Childers' testimony. Specifically, Plaintiffs assert that

> [t]rough that testimony that was intended to be offered as a party admission at trial, Defendant confirmed and ratified that ½ Probable Maximum Flood (or "PMF") was the "required spillway design flood" (or "SDF"[7]) for the Semmes Lake dam among along with the following additional facts:
>
> (A) that the required SDF for Semmes Lake Dam at the time of the October 3-4, 2015 storm event was ½ PDF;
>
> (B) that the determination of SDF requires objective evaluation of hazard potential and technical standards; that the Army Regulations required reevaluation and validations of the hazard potential classification every two years by the person with decision-making authority as to SDF; and that "design flow (flood)"

---

[7] "The design flood of any dam is the flow rate and volume at which the dam must be maintained to allow passage of the design flows (flood) without major deterioration of dam components, damaging erosive undermining action, or loss of stability." (ECF No. 126-6 at 2.) "The selection of the design flood should be based on an evaluation of the relative risks and consequences of flooding, under both present and future conditions." (*Id.*)

9

> means SDF as that term is used in the mandatory "Performance Standards" for dams in the Army Regulations;
>
> (C) that the installation commander's decision to install a curb to obstruct water from entering the emergency spillway in 2008 resulted in an overall decrease in the spillway capacity for Semmes Lake Dam, thereby further hindering its ability to allow passage of the SDF as required by AR 420-1, Section 7-47(b); and
>
> (D) that the low-level outlet on the primary spillway is part of the structure of the dam, that it was inoperable and in need of repair at the time of the storm event, thereby implicating the provisions of Section 7-52(b) of AR 420-1, mandating that the dam be immediately repaired, breached, or the pool lowered.

(ECF No. 191-1 at 2–3; *see also id.* at 5–12.) Plaintiffs further assert that the court should alter or amend the September Order and Judgment because LtCol Childers' testimony is new evidence that demonstrates that the Government's "employees violated multiple mandatory Army Regulations that (a) they had no choice but to follow or (b) that were not susceptible to policy analysis grounded in social, economic, or political considerations with respect to the following challenged conduct." (*Id.* at 12.) As a result, Plaintiffs argue that the owner of the Semmes Lake and Lower Legion Lake Dams–the installation commander under AR 420-72 (prior to February 2008) and the garrison commander under AR 420-1 (after February 2008)–lacked discretion under mandatory Army regulations thereby making the discretionary function exception inapplicable to this action. (*E.g.*, ECF No. 191-1 at 13–23.) Accordingly, Plaintiffs "request that the Court grant Plaintiffs' motion to reconsider its Judgment, deny Defendant's motion to dismiss on the basis of subject matter jurisdiction, and reset deadlines for the submission of pre-trial briefs and for a bench trial on Defendant's liability to Plaintiffs." (*Id.* at 23.)

The Government opposes Plaintiffs' Motions asserting that LtCol Childers' testimony "is not new, for it could with due diligence have been discovered before the judgment was entered." (ECF No. 193 at 2.) The Government further asserts that Plaintiffs' Motions should be denied because (1) "Plaintiffs were dilatory in failing to obtain the evidence during the two-year discovery period that preceded the entry of judgment"; (2) "the testimony is merely cumulative,

adding nothing to the evidence timely adduced"; (3) "the testimony is immaterial because it does not bear on the basis of the dismissal, namely, the discretion afforded by Army regulations with respect to the challenged conduct and the policies informing the exercise of that discretion"; and (4) "the evidence, if considered, would not require that the judgment be vacated, because Plaintiffs still cannot meet their burden of showing that either the challenged conduct was not discretionary or was not susceptible to policy analysis." (*Id.*; *see also id.* at 4–18.) Therefore, the Government argues that because the alleged newly discovered evidence "could readily have been obtained before judgment was entered," the court should deny Plaintiffs' Motions. (*Id.* at 18–19.)

In their Reply, Plaintiffs assert that even if LtCol Childers' testimony is not determined to be new evidence, the court should consider it because it "will have to consider this evidence anyway in two related cases where Defendant failed to file motions to dismiss until after the judgment at issue here." (ECF No. 200 at 2 (citing *Guerra v. United States*, C/A No. 3:16-cv-03054-JMC; *Estate of Anne Webber Fulmer v. United States*, C/A No. 3:17-cv-0674-JMC)).)

B.  The Court's Review

In the September Order, the court concluded that the discretionary function exception was applicable to Plaintiffs' claims because they were unable to (1) specify a mandatory "federal" statute, regulation, or policy that required a SDF of ½ PMF at Semmes Lake Dam; or (2) demonstrate that any failure by the Government to either operate the Semmes Lake Dam with a ½ PMF or conduct specified maintenance on the Semmes Lake Dam and/or the Lower Legion Lake Dam was a decision made outside of the scope of policy-driven duties. (ECF No. 186 at 21, 22.) The premise of Plaintiffs' Motions to Alter or Amend Judgment is that the court should alter or amend the September Order and Judgment because they are obviated by the new

11

evidence of LtCol Childers' testimony, which Plaintiffs assert establishes that the required SDF for the Semmes Lake Dam was a ½ PMF[8] and that the discretionary function exception is inapplicable in this case because the owner of the Semmes Lake and Lower Legion Lake Dams failed to review or verify the hazard potential classification as required by Army regulations or make any determination that the SDF was anything other than a ½ PMF.[9] (ECF Nos. 191-1 at 13

---

[8]
    Q.    Turning to paragraph G of your 15-6 investigation report, what was the findings of the government as it relates in paragraph G?
    A.    To clarify, are you asking the findings of the government or the findings of the - -
    Q.    The findings of the government in the 15-6 investigation report?
    A.    The government, meaning the same as Fort Jackson?
    Q.    Yes, sir.
    A.    Fort Jackson in the 15-6 findings memo states that 'on 4 October Semmes Lake failed after receiving 13.4 inches of rain in twenty-four hours, which represented approximately sixty percent of the required spillway design flood.'
    Q.    Okay. And the report uses the term required, correct?
    A.    That's correct.
    Q.    Okay. So, Fort Jackson viewed it as [] mandatory then, correct?
    A.    At the time Fort Jackson understood incorrectly the requirement for the spillway design flood for Semmes Lake to be one half of the probable maximum flood.
    Q.    And the next section that deals with findings related to Lower Legion Lake, is that correct?
    A.    Yes.
    Q.    And this is the 15-6 investigation report findings of the Department of the Army, correct?
    A.    Correct.

(ECF No. 191-3 at 62:10–63:14.)

[9]
    Q.    Okay. In the language that you read, both in 420-72 and 420-1 it states that a hazard classification has to be reviewed and validated every two years, is that correct?
    A.    That's correct.
    Q.    Okay. Is it your testimony today that that would be the same at Semmes Lake and at Lower Legion Lake?
. . .
    A.    Again, the regulation here states, you know, states that classification of installation dams shall be reviewed and validated every two years by the installation commander, later ·changed to garrison commander.
    Q.    And Fort Jackson is subject to those regulations, correct?

(citing ECF Nos. 103-3 at 5 § 7-47(c) & 103-4 at 5 § 5-6(b)) & 200 at 6–8.) Put differently, Plaintiffs contend that "[t]he undisputed facts show that the required SDF for Semmes Lake Dam was ½ PMF, and there is no evidence that the garrison commander (or installation commander) conducted the biennial review and verification of the hazard potential classifications or otherwise determined that another SDF was appropriate based on then-current conditions." (ECF No. 191-1 at 14.) To support their Motions, Plaintiffs expressly rely on *Berkovitz v. United States*, 486 U.S. 531 (1988), wherein the Supreme Court concluded that the National Institutes of Health's Division of Biologic Standards failed to perform a clear duty under federal law when it issued a license for an oral polio vaccine without examining the product and determining that the product was in compliance with all regulatory safety standards:

> Viewed in light of these principles, petitioners' claim regarding the release of the vaccine lot from which Kevan Berkovitz received his dose survives the Government's motion to dismiss. Petitioners allege that, under the authority granted by the regulations, the Bureau of Biologics has adopted a policy of testing all vaccine lots for compliance with safety standards and preventing the distribution to the public of any lots that fail to comply. Petitioners further allege that notwithstanding this policy, which allegedly leaves no room for implementing officials to exercise independent policy judgment, employees of the Bureau knowingly approved the release of a lot that did not comply with safety standards. *See* App. 13; Brief for Petitioners 20–21; Reply Brief for Petitioners 15–17. Thus, petitioners' complaint is directed at a governmental action that allegedly involved no policy discretion.

*Berkovitz*, 486 U.S. at 543.

"[T]he standard governing relief on the basis of newly discovered evidence is the same whether the motion is brought under rule 59 or rule 60." *Boryan v. United States*, 884 F.2d 767, 771 (4th Cir. 1989) (citing *U.S. Fid. & Guar. Co. v. Lawrenson*, 334 F.2d 464, 475 n.2 (4th Cir. 1964)). In this regard, the moving party must demonstrate:

---

    A.    They are.
(ECF No. 191-1 at 76:14–77:5.)

> (1) the evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the new evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended.

*Id.* (citing *Taylor v. Texgas Corp.*, 831 F.2d 255, 259 (11th Cir. 1987)). Upon its review, the court agrees with the Government that LtCol Childers' testimony is cumulative of evidence already provided by the parties before Judgment was entered. (*See, e.g.*, ECF No. 193 at 10.) In the September Order, the court reviewed and considered each of the Army Regulations, Department of the Army ("DA") Pamphlets, and EAPs that are referenced in LtCol Childers' testimony and which form the basis of Plaintiffs' claims alleging that the Semmes Lake and Lower Legion Lake Dams were not maintained as required by mandatory directives. In this regard, the court finds that LtCol Childers' testimony is not new evidence warranting reconsideration of the September Order and Judgment.

To err on the side of caution, the court decided to also analyze the September Order and Judgment to determine whether they contain clear error and/or inflict a manifest injustice on Plaintiffs.[10] Plaintiffs have been steadfast in their belief that one or more of the following documents contain mandatory language requiring specific conduct regarding the oversight/maintenance of the Semmes Lake and Lower Legion Lake Dams to satisfy their burden

---

[10] Clear error occurs when the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *United States v. Harvey*, 532 F.3d 326, 336 (4th Cir. 2008) (internal quotation marks omitted); *see also United States v. Martinez–Melgar*, 591 F.3d 733, 738 (4th Cir. 2010) ("[C]lear error occurs when a district court's factual findings are against the clear weight of the evidence considered as a whole." (internal quotation marks omitted)); *Miller v. Mercy Hosp., Inc.*, 720 F.2d 356, 361 n.5 (4th Cir. 1983) (explaining that a district court's factual finding is clearly erroneous if "the finding is against the great preponderance of the evidence" (internal quotation marks omitted)). Manifest injustice occurs where the court "has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension . . . ." *Campero USA Corp. v. ADS Foodservice, LLC*, 916 F. Supp. 2d 1284, 1292–93 (S.D. Fla. 2012) (citations omitted).

of establishing the inapplicability of the discretionary function exception:

- AR 420-72 at § 5-5: "Army dams at all CONUS[11] installations will be maintained at or above the minimum condition levels of host State and as specified herein and in the above referenced FEMA[12] documents." (ECF No. 103-4 at 5.)
- AR 420-72 at § 5-6(a) & AR 420-1 at § 7-47(b): "All dams must be maintained to allow passage of the design flows (flood) without major deterioration of dam components or damaging erosive or undermining action, nor loss of stability." (ECF Nos. 103-4 at 5, 103-3 at 5.)
- AR 420-72 at § 5-6(b): "Final decision responsibility on the design flood/risk analysis shall be the decision of the dam owner, the installation commander." (ECF No. 103-4 at 5.)
- AR 420-1 at § 7-47(c): "Final decision responsibility on the design flood and risk analysis shall be the decision of the dam owner, the garrison commander." (ECF No. 103-3 at 5.)
- AR 420-1 at § 7-4(b)(5): "Garrison commanders could be held liable for any legal claims, obligations, or liabilities resulting from the failure of a dam, if the commander had not ensured that all legal and safety requirements had been met." (ECF No. 152-5 at 3.)
- AR 420-1 at § 7-46: "Classification of each installation's dams shall be reviewed and validated every 2 years by the garrison commander in conjunction with submission of required information for the biennial National Dam Safety Program Progress Report." (ECF No. 103-3 at 5.)
- AR 420-1 at § 7-47(a): "Army dams will be maintained at or above the minimum condition levels of host state or host nation and as specified herein." (ECF No. 103-3 at 5.)
- AR 420-1 at § 7-5(a): "In providing transportation infrastructure and dam safety services, Army garrisons will comply with all applicable Federal laws and regulations." (ECF No. 126-2 at 9.)
- DA Pamphlet 420-1-3 at § 6-4: Garrison commanders may be held personally liable for the safety of the dams under their authority and must fund projects to correct the deficiencies (*see* HQDA, Office of the Chief of Engineers, memorandum Subject Command Responsibility for Dam Safety, dated 17 Aug 1992; available at HQDA, ACSIM (DAIM–OFD). If funding is not available, they will forward requests up the chain of command, with high priority, to get funding for the projects and the responsibility will shift to the next level of authority. (ECF No. 103-9 at 7.)
- DA Pamphlet 420-1-3 at § 6-4: "Earthen dams will have vegetation properly controlled and mowed, seepage will be constantly observed and controlled, and erosion repaired. Spillways will be properly maintained and erosion repaired. Outlets will be maintained and controls tested annually." (ECF No. 103-9 at 7.)
- 1997 EAP: "The appropriate Spillway Design Flood (SDF) was determined to be ½ the PMF." (ECF No. 103-11 at 9.)

---

[11] "CONUS" means the Continental United States. (ECF No. 152 at 11 n.7.)
[12] "FEMA" is the acronym for the Federal Emergency Management Agency.

- 2010 EAP: "One half of the Probable Maximum Precipitation (PMP) is the required design storm under the South Carolina Rules for Dam Safety for Semmes Lake Dam." (ECF No. 103-12 at 8.)

Conduct is mandatory when "a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee [then] has no rightful option but to adhere to the directive.'" *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz*, 486 U.S. at 536); *see also, e.g., Nguyen v. United States*, 556 F.3d 1244, 1250 n.2 (11th Cir. 2009) (observing that conduct is mandatory "when a federal statute, regulation, or policy specifically prescribes a course of conduct embodying a fixed or readily ascertainable standard"). The "relevant inquiry is whether the controlling statute or regulation mandates that a government agent perform his or her function in a specific manner." *Hughes v. United States*, 110 F.3d 765, 768 (11th Cir. 1997).

Upon consideration of the foregoing Army Regulations, DA Pamphlets, and EAPs in the context of Plaintiffs' arguments, the court is not persuaded its September Order and Judgment misconstrued the aforementioned as they relate to the applicability of the discretionary function exception.[13] In this regard, the court observes that the above-cited Army Regulations do not appear to convey mandatory directives outlining the precise manner in which dams should be maintained, but rather general guidelines or policy goals. *E.g., Waverly View Inv'rs, LLC v. United States*, 79 F. Supp. 3d 563 (D. Md. 2015) ("For example, DoD Directive 5500.5's declaration that Army activities 'must not adversely affect neighboring civilian populations or the environment[,]' 30 Fed. Reg. at 14909, does not 'specifically prescribe[ ] a course of action for [the Army] to follow' in disposing of TCE and PCE at Fort Detrick, *Berkovitz*, 486 U.S. at 536, 108 S. Ct. 1954."); *Ochran v. United States*, 117 F.3d 495, 500 (11th Cir. 1997) ("[T]he use

---

[13] The court notes that its assessment of the applicability of the discretionary function exception based on this combination of Army Regulations, DA Pamphlets, and EAPs appears to be an issue of first impression within this Circuit.

of the word 'shall' in describing the responsibilities of the AUSA does not necessarily mean that the Guidelines left no room for the AUSA to exercise judgment or choice."); *OSI, Inc. v. United States*, 285 F.3d 947, 952 (11th Cir. 2002) (Holding that "an agency manual which provides only objectives and principles for a government agent to follow does not create a mandatory directive which overcomes the discretionary function exception to the FTCA"). Moreover, as the court observed in the September Order (*see* ECF No. 186 at 18–21), DA Pamphlets and EAPs generally operate as advisory guidelines. *See also* AR 25-30 at § 3-38 ("Pamphlets are informational in nature and contain guidance or reference material of a continual nature. Pamphlets will not be used to establish policy."); (ECF No. 103-11 at 5(e) ("The purpose of this [emergency action] plan is to: (1) provide guidance on the identification of and associated preventive action for emergency situations at the subject project . . . ."). Therefore, the court is unable to find that either one or a combination of the Army Regulations, DA Pamphlets, and EAPs cited by Plaintiffs is a specific mandatory policy that removes discretion concerning the oversight/maintenance of the Semmes Lake and Lower Legion Lake Dams. The basis for the court's conclusion about the applicability of the discretionary function exception in this action is accurately reflected in the following observation made by a district court in dismissing claims for personal injury from drinking contaminated water:

> The question is not whether Camp Lejeune was under a directive to provide a clean water supply; the question is whether those responsible for the required clean water supply had any discretion in the manner in which that supply was to be achieved. The fact that BUMEDs[14] were orders that had to be followed by the Marine Corps does not mean that the BUMEDs contained specific mandatory instructions for how to achieve a clean water supply that removed any discretion from the part of those responsible for the water supply at Camp Lejeune. There simply is no question here but that there were a myriad of discretionary decisions

---

[14] The court defined "BUMEDs" as "regulations issued by the Navy Bureau of Medicine and Surgery [] as well as other regulations provid[][ing] mandatory duties and specific courses of action with respect to safe water supply." *In re Camp Lejeune N.C. Water Contamination Litig.*, 263 F. Supp. 3d 1318, 1344 (N.D. Ga. 2016).

that had to be made about how to provide clean water at Camp Lejeune.

*In re Camp Lejeune N.C. Water Contamination Litig.*, 263 F. Supp. 3d 1318, 1350–51 (N.D. Ga. 2016).

Accordingly, the court finds that entry of the September Order and Judgment did not result in the commission of either clear error of law or manifest injustice.

## V.   CONCLUSION

For the reasons stated above, the court **DENIES** Plaintiffs' Motions to Alter or Amend Judgment pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure.  (ECF No. 191 (*Cohen*); ECF No. 134 (*Brown*); ECF No. 120 (*KGOAI*).)

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

December 21, 2018
Columbia, South Carolina